## 55815. HETHCOX v. HETHCOX.

Birdsong, Judge.

This case involves an interpretation and application of the provisions of the Uniform Reciprocal Enforcement of Support Act (URESA). The facts as shown by a stipulation of the hearing at the URESA proceedings show that Mr. and Ms. Hethcox were divorced in January, 1971, and custody of two children was awarded to Ms. Hethcox along with alimony and support. In March, 1974, appellant, Mr. Hethcox, petitioned for change of custody in the Superior Court of DeKalb County. Mr. and Ms. Hethcox signed a consent agreement recognizing the voluntary change of custody of the two children to Mr. Hethcox. At the same time of the signing of this consent agreement, Ms. Hethcox relinquished physical custody to Mr. Hethcox. A short time thereafter, while the children were on a weekend visit with their mother, Ms. Hethcox removed the children from the State of Georgia. In July, 1974, the Superior Court of DeKalb County amended the custody order, placing the children in the custody of their father, Mr. Hethcox. After custody was formally transferred to appellant, Ms. Hethcox returned the children to his custody and care. Mr. Hethcox maintained legal and physical custody and care of the children for the

next months until April, 1975. In April, 1975, again while on a weekend visit with their mother, the children were removed from the state and carried to the home of Ms. Hethcox' brother in North Carolina. For the next year and a half, appellant did not know where his ex-wife or his children were located. In November, 1976, appellant ascertained that the children were in North Carolina and sought to regain physical custody as authorized by the order of legal custody. During this time appellant furnished minimal support which included money for clothes and Christmas gifts. In November, 1977, Ms. Hethcox filed for support in Mecklenburg County, North Carolina, under the provisions of URESA. In accordance with the provisions of that Act, appellant was required to show cause in Douglas County Superior Court as to why he should not furnish such support. After the URESA petition was filed, appellant went to North Carolina and returned the children to his home in Douglas County.

After hearing evidence and considering the URESA petition, the trial court determined that Ms. Hethcox was entitled to $200 per month as support for the two children and ordered appellant to pay to her $6,000 as arrearages for the support of the children from April 1975, until November, 1977. Appellant urges that the trial court committed four errors in that award. *Held:*

1. The purposes of URESA are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto. Ga. L. 1958, pp. 34, 35 (Code Ann. § 99-902a); *Balasco v. County of San Diego,* 140 Ga. App. 482, 485 (231 SE2d 485). A petition may be filed on behalf of a minor obligee (child) by the person having custody of the minor (Ga. L. 1958, pp. 34, 41 (Code Ann. § 99-912a)) or if the custodial parent is the recipient of welfare support, then the paying agency may be subrogated to the rights of the payment of support money (Ga. L. 1958, pp. 34, 40 (Code Ann. §§ 99-908a and 99-911a)). In the present case, it is clear that the petitioner for support is Ms. Hethcox and not the State of North Carolina or Mecklenburg County.

2. We now consider whether Ms. Hethcox is a proper petitioner. Although at the time she filed the petition under URESA in North Carolina, Ms. Hethcox had

physical custody of the children in North Carolina, her physical custody was in defiance of an order of the Superior Court of DeKalb County placing lawful custody in their father, the appellant. While we recognize that the expenses of the support of the children were resting upon Ms. Hethcox during the time she had the children in her custody from April, 1975, until November, 1977, she also deprived the father of his parental rights of love, affection, and services of his children. She also precluded him from even supporting his children at all from April, 1975, until November, 1976, during which time appellant did not know the whereabouts of his children. We are constrained to conclude that where the statute requires the furnishing of support for dependent children to the person having custody of those children, the statute reasonably is restricted to that person having lawful custody by virtue of a court order or with the consent of the obligor parent. To hold otherwise should be to reward a physical custodian who is acting in actual defiance of and contrary to the order of a court of the responding state. Though there are no cases directly involving this point in this state, our Supreme Court has on a related matter held that the judicial powers of this state may not be used to change custody where the noncustodial parent is withholding custody of the child from the custodial parent. See *Meek v. Baillargeon,* 239 Ga. 137 (236 SE2d 81).

3. Notwithstanding our analysis in Division 2, we will nevertheless consider this appeal, for the reason that Ms. Hethcox properly petitioned the court of our sister state of North Carolina, which certified that petition to this court for resolution. The issue for determination is whether a parent not having legal custody of dependent children is entitled to support under URESA. Again, there are no cases in this state addressing that question. However, a similar case arose in Ohio which was the responding state to the State of New Jersey, the initiating state. State of New Jersey v. Morales, 35 Ohio App. 2d 56 (299 NE2d 920). In the Morales case, the mother wrongfully procured custody of the children even though custody had been awarded to the father. When the father refused to pay support for the children, the mother filed a

URESA petition. The court held in that case: ". . . [W]e find that there is no duty on a father to make payments to the mother for the support of the minor children . . . where the father has obtained a prior order of custody, and the mother, contrary to such order . . ., has removed the children out of the court's jurisdiction." 35 Ohio App. 2d at 63. We are satisfied that such should be the rule in this state. Such a holding is consistent with the position taken by our courts in change of custody cases such as *Meek v. Baillargeon,* supra.

4. Finally, we observe the trial court found that appellant was over two years in "arrears" of support payments. However, the applicable codal section does not provide for "arrearages." Ga. L. 1958, pp. 34, 43 (Code Ann. § 99-920a) provides simply that if the court of the responding state finds a duty of support, it may order the defendant to furnish support or "reimbursement" therefor. Once more, we find no cases interpreting the word "reimbursement" in this state. However, we do find some help in the case of Ainbender v. Ainbender, 344 A2d 263, a 1975 case from the State of Delaware. There the interplay of the words "arrearages" and "reimbursement" was considered. In that case, the Delaware court stated: "The Delaware Legislature, in adopting its version of the Uniform Reciprocal Enforcement of Support Act, specifically omitted 'arrearages' as an enforceable duty of support. For [the lower court] to order reimbursement based solely on the total amount of arrearages would permit [the lower court] to do indirectly what it was not authorized to do directly. The amount of reimbursement awarded [the mother] should be based on evidence submitted to [the lower court] setting forth the expenses incurred by [the mother] in supporting . . . their son . . ." 344 A2d 263 at p. 266. The language of the Georgia statute in this regard is the same as the language in the Delaware statute. We conclude the result should be the same. This is particularly true where "support" payments are directed to be paid to one not actually presently supporting the dependents involved. At the time of the court's order, custody was both legally and physically in the appellant. Notwithstanding the presence of the children with their father, he would be required to pay

$6,000 to the mother for arrearages in support incurred while she illegally held the children in custody. She would be the sole beneficiary to the financial detriment of the children so long as such payments were diverted from the father to the mother, but the duty for support is in the father. In the absence of a transcript, we have no evidence establishing Ms. Hethcox' actual expenses. We conclude, therefore, that the trial court exceeded its judicial authority in granting "arrearages" as opposed to re-imbursement for expenses incurred.

For the reasons above stated, the trial court erred in finding that appellant was indebted for arrearages or that Ms. Hethcox was entitled to support for the period from April, 1975, through November, 1977, and entering an order to that effect.

*Judgment reversed. Bell, C. J., and Shulman, J., concur.*

ARGUED MAY 15, 1978 — DECIDED JUNE 27, 1978.

*Thompson, Stovall, Stokes & Thompson, James F. Stovall, III, Edward C. Stone,* for appellant.

*Robert W. Pitts, Assistant District Attorney,* for appellee.